UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MICHAEL CARMONA,                                )
                                                )
                    Plaintiff,          )     **COMPLAINT**
                                                )
    -against-                                )     **JURY TRIAL DEMANDED**
                                                )
THE CITY OF NEW YORK; POLICE OFFICER            )
EVAN MARRO, Shield No. 636; POLICE              )
OFFICER ANTHONY BRUNO, Shield No.               )
15107; POLICE OFFICER "FNU" [FIRST NAME         )
UNKNOWN] PAPI (spelling is phonetic); POLICE    )
OFFICER "FNU" [FIRST NAME UNKNOWN]              )
SCHMIDT (spelling is phonetic); POLICE          )
CAPTAIN CHRISTOPHER GIAMBRONE; JOHN             )
DOES; and RICHARD ROES,                         )
                                                )
                    Defendants.         )
------------------------------------------------------------------X

## **PRELIMINARY STATEMENT**

      1.      This is a civil rights action in which the plaintiff MICHAEL CARMONA seeks relief for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the United States Constitution, including its First, Fourth and Fourteenth Amendments, and by the laws and Constitution of the State of New York.  Plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys' fees, and such other and further relief as this court deems equitable and just.

1

## JURISDICTION

2. This action is brought pursuant to the Constitution of the United States, including its First, Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983. Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

## JURY TRIAL DEMANDED

3. Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## VENUE

4. Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## PARTIES

5. Plaintiff was at all times relevant herein a resident of the State of New York, Queens County. Plaintiff is Latino. Plaintiff is of Puerto Rican descent.

6. Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

7. Defendants POLICE OFFICER EVAN MARRO, POLICE OFFICER

ANTHONY BRUNO, POLICE OFFICER "FNU" [FIRST NAME UNKNOWN] PAPI (spelling is phonetic), POLICE OFFICER "FNU" [FIRST NAME UNKNOWN] SCHMIDT (spelling is phonetic), POLICE CAPTAIN CHRISTOPHER GIAMBRONE, and JOHN DOES are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department (NYPD), a municipal agency of defendant THE CITY OF NEW YORK.  Defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants POLICE OFFICER EVAN MARRO, POLICE OFFICER ANTHONY BRUNO, POLICE OFFICER "FNU" [FIRST NAME UNKNOWN] PAPI (spelling is phonetic), POLICE OFFICER "FNU" [FIRST NAME UNKNOWN] SCHMIDT (spelling is phonetic), POLICE CAPTAIN CHRISTOPHER GIAMBRONE, and JOHN DOES are sued individually.

    8.     Defendants POLICE CAPTAIN CHRISTOPHER GIAMBRONE and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of subordinate members of the police department under their command.  Defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF

3

NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants POLICE CAPTAIN CHRISTOPHER GIAMBRONE and RICHARD ROES are sued individually.

## STATEMENT OF FACTS

9. On June 23, 2013 Plaintiff attended a family cookout and party that was organized and held in his neighborhood, in the park area of the projects where Plaintiff lived.

10. Plaintiff had been enjoying the festivities for much of the day, without any incident.

11. There were no incidents between the party-goers (almost all of whom were black and Latino) and the police that Plaintiff observed throughout the day.

12. When the evening arrived, however, numerous JOHN DOES members of the NYPD harassed, intimidated and otherwise disturbed the members of the community who were lawfully present at the location, without any justification for attempting to do so.

13. The JOHN DOES were aggressive and rude to the people present when the evening came, and illegally told them that they had to go home instead of remaining outside in their neighborhood on a beautiful summer evening.

14. A number of people left, but a large number of people, including Plaintiff, remained in the park area for the next few hours, enjoying the evening.

15. At approximately 8:30 or 9:00 p.m. even more JOHN DOES members of the NYPD arrived, and again illegally told people that they had to go inside of their homes.

16. Plaintiff - at approximately 9:00 p.m. – crossed Fotch Blvd. to a store that was

located on the corner of Fotch Blvd. and Guy R. Brewer Blvd.

17. Plaintiff crossed legally at the crosswalk, at the intersection of Fotch Blvd. and Guy R. Brewer Blvd.

18. When Plaintiff lawfully crossed Fotch Blvd., there were many other people in the vicinity of Fotch Blvd. and Guy R. Brewer Blvd., including a number of people on the sidewalks, as well as in the roadway.

19. Other than lawfully crossing Fotch Blvd. to get to the store, Plaintiff did not spend any time in the roadway.

20. Plaintiff went into the store, and the police followed Plaintiff and others into the store, and told Plaintiff and others present that they had to leave the store.

21. Plaintiff obeyed this illegal command by the JOHN DOES officers, and left the store.

22. The JOHN DOES officers made the store owner close the store's gate, so that the store's owner could only conduct business through a window to the sidewalk.

23. Once Plaintiff exited from the store, and was on the sidewalk of Guy R. Brewer Blvd., two JOHN DOES Officers, on information and belief Defendants BRUNO and SCHMIDT, immediately approached Plaintiff, and told Plaintiff that he had to go inside his home.

24. Plaintiff responded that he had been in the store trying to buy a soda, when these Officers' JOHN DOES colleagues from the NYPD kicked him out of the store before he could make his purchase, and now he wanted to buy his soda from the store's window.

25. Plaintiff told Defendants BRUNO and SCHMIDT that he was a "grown ass man," and not a little boy, and did not have to go inside his home in the evening if he did not want to,

and that he was not a part of the larger group (of young people, which Plaintiff is not) who appeared to be the focus of the JOHN DOES Officers' attention.

26. A supervisory officer, on information and belief CAPTAIN GIAMBRONE, spoke to the JOES DOES line officers present, and told them that if the people did not go home, they should arrest the people.

27. Defendants BRUNO and SCHMIDT then grabbed Plaintiff - and only Plaintiff - and other JOHN DOES officers, on information and belief including Defendants MARRO and PAPI, joined in.

28. Plaintiff – who is of small stature (approximately 5'6" and 127 lbs), and who has a prosthetic leg from the knee down on his right leg – offered no physical resistance to these Defendant Officers.

29. Despite there being no physical resistance from Plaintiff, Defendant MARRO wantonly, viciously, and unnecessarily kicked Plaintiff's prosthetic leg out from under him, causing Plaintiff to fall to the ground and Plaintiff's prosthetic leg to come completely off, and Plaintiff's leg stump to hit the ground hard, causing a contusion and a gash to Plaintiff's leg stump.

30. These Defendant Officers then picked Plaintiff up and – not letting Plaintiff put his prosthetic leg back on – carried Plaintiff to a nearby police car.

31. Plaintiff was taken to the NYPD 113th Precinct, where he was held for a brief period of time, and then brought in custody to Jamaica Hospital and treated for the injury to his leg stump.

32. After a couple of hours at the hospital, Plaintiff was brought to Queens Central

Booking, where he was held overnight, until his arraignment in approximately the early afternoon the following day, when he was released on his own recognizance.

33.     The NYPD arrest report lists Defendant BRUNO as the arresting officer, and falsely alleges, as the most serious allegation among a number of false allegations, that Plaintiff punched Defendant MARRO in the face.

34.     Plaintiff, in fact, was the victim of an assault by Defendant MARRO, as described above, and not the perpetrator of an assault upon Defendant MARRO.

35.     Plaintiff had not violated any laws on the date of his arrest.

36.     Plaintiff in April of 2016 accepted an Adjournment in Contemplation of Dismissal ("ACD") as to all of the false charges that were lodged against him, and all charges will be dismissed in their entirety six months from the date of acceptance of the ACD.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

37.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

38.     By their conduct and actions in seizing plaintiff, falsely arresting and imprisoning plaintiff, assaulting and battering plaintiff, searching plaintiff, abusing process against plaintiff, trespassing upon plaintiff, violating rights to equal protection of plaintiff, violating and retaliating for the exercise of the right to free speech and association of plaintiff, inflicting emotional distress upon plaintiff, violating rights to due process of plaintiff, fabricating evidence / false statements against plaintiff, failing to intercede on behalf of the plaintiff and in failing to protect the plaintiff

from the unjustified and unconstitutional treatment he received at the hands of other defendants, Defendants POLICE OFFICER EVAN MARRO, POLICE OFFICER ANTHONY BRUNO, POLICE OFFICER "FNU" [FIRST NAME UNKNOWN] PAPI (spelling is phonetic), POLICE OFFICER "FNU" [FIRST NAME UNKNOWN] SCHMIDT (spelling is phonetic), POLICE CAPTAIN CHRISTOPHER GIAMBRONE, JOHN DOES and/or RICHARD ROES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth and Fourteenth amendments.

39. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

40. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

41. By their conduct in failing to remedy the wrongs committed by their subordinates and in failing to properly train, supervise, or discipline their subordinates, supervisory defendants POLICE CAPTAIN CHRISTOPHER GIAMBRONE and RICHARD ROES caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983 and the United States

Constitution, including its First, Fourth and Fourteenth amendments.

42.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

### THIRD CLAIM

### LIABILITY OF DEFENDANT THE CITY OF NEW YORK FOR CONSTITUTIONAL VIOLATIONS

43.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

44.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

45.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

46.      At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto

policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free speech and association in a manner that affronts police officers or is interpreted by police officers as challenging their authority or observing or documenting their activities. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

47. At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had de facto policies, practices, customs and/or usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence." Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

48. At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had de facto policies, practices, customs and/or usages of engaging in unconstitutional and overly aggressive stops, searches, arrests, and issuances of summonses, which are implemented disproportionately upon people of color. Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

49. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

WHEREFORE, plaintiff demands the following relief jointly and severally against all of the defendants:

    a. Compensatory damages;

    b. Punitive damages;

    c. The convening and empaneling of a jury to consider the merits of the claims herein;

    d. Costs and interest and attorney's fees;

    e. Such other and further relief as this court may deem appropriate and equitable.

Dated:    New York, New York
               June 15, 2016

                                    _____/S/_____
                                    JEFFREY A. ROTHMAN, Esq.
                                    315 Broadway, Suite 200
                                    New York, New York 10007
                                    (212) 227-2980

                                    JASON LEVENTHAL, Esq.
                                    Leventhal Law Group, P.C.
                                    45 Main Street, Suite 230
                                    Brooklyn, NY 11201
                                    (718) 556-9600

                                    Attorneys for Plaintiff